(27 Misc. Rep. 356.)

## LOWE v. BENNETT.

(Supreme Court, Trial Term, Kings County. May, 1899.)

1. LIBEL—JUSTIFICATION—PLEADING.

A complaint charged libel by publishing, concerning plaintiff, that, on the trial of an action for divorce brought by a wife against her husband because of adultery alleged to have been committed with plaintiff, photographs had been introduced in evidence showing the defendant in the divorce suit disrobing in plaintiff's house, and alleged the meaning of such publication to be that the photographs furnished evidence that plaintiff had been guilty of adultery. The answer alleged that it was true that on the trial of such divorce suit such photographs had been introduced, and that witnesses had testified to having seen the defendant in the divorce suit disrobe in plaintiff's house. *Held* insufficient as a plea of justification, because it failed to charge the commission of the adultery imputed by the publication.

**2. PLEADING—INSUFFICIENT ANSWER—REMEDY.**
An answer cannot be stricken for failure to set up a defense, the remedy being by demurrer or by objection on the trial.

Action by Martha D. Lowe against James Gordon Bennett. On motion to strike part of the answer. Denied.

The complaint sets out the following as the defamatory words:

"Photographs to win divorce suit. Mrs. Cruikshank's Attorneys introduce them at retrial of her suit against the Doctor. Under flashlight at night. Snap shots at Dr. Cruikshank by an expert photographer in a house across street. Prominent persons involved. Photographs are relied upon to win Mrs. Cruikshank's suit for divorce from Dr. Cruikshank, a prominent physician of Brooklyn. The trial is on in the Brooklyn Supreme Court, and William L. Drummond was the all important first witness. He said he was an expert photographer and identified photographs in the possession of counsel for Mrs. Cruikshank as his work. Mrs. Martha Dorlon Lowe is the woman of whom Mrs. Cruikshank complained, and she lived at No. 18 Berkeley Place, Brooklyn. Mr. Drummond testified that the photographs were taken by him from No. 11 Berkeley Place, almost directly opposite. Mrs. Cruikshank and her father had engaged an apartment at No. 11 for him, and he had taken by a flashlight process pictures of Dr. Cruikshank as he entered and left Mrs. Lowe's house late at night. He had also caught two or three pictures of the doctor, the witness alleged, as he was disrobing in an apartment in Mrs. Lowe's house. Opening his case for the plaintiff, Lawyer Latson told the Jury he would prove every allegation in Mrs. Cruikshank's complaint by the indisputable evidence offered by these photographs."

It then pleads the following innuendo:

"That the meaning of the said language was and the defendant intended thereby to say and to impute against the plaintiff that upon the trial of a suit for divorce, which had been instituted by one Maud Cruikshank against one William J. Cruikshank, and in which the defendant had interposed counter charges of adultery and in which decrees of absolute divorce were demanded by both parties, and in which this plaintiff was named by the said Maud Cruikshank as co-respondent, photographs had been introduced in evidence by the said Maud Cruikshank, which had been taken by flashlight at night, and that said photographs revealed the figure of said William J. Cruikshank disrobing in an apartment of the house of this plaintiff and furnished evidence that said William J. Cruikshank and this plaintiff had been guilty of illicit sexual relations and adultery."

It then alleges "that the language so published was false."

After a general denial, which is miscalled a "first defense," the answer sets up the following defense which it calls a "second defense":

"For a second defense the said defendant states that so much of the alleged libel as is as follows, namely, 'Photographs to win divorce suit. Mrs. Cruikshank's Attorneys introduce them at retrial of her suit against the Doctor. Under flashlight at night. Snap shots at Dr. Cruikshank by an expert photographer in a house across street. Prominent persons involved. Photographs are relied upon to win Mrs. Cruikshank's suit for divorce from Dr. Cruikshank, a prominent physician of Brooklyn. The trial is on in the Brooklyn Supreme Court, and William L. Drummond was the all important first witness. He said he was an expert photographer and identified photographs in the possession of counsel for Mrs. Cruikshank as his work. Mrs. Martha Dorlon Lowe is the woman of whom Mrs. Cruikshank complained, and she lived at No. 18 Berkeley Place, Brooklyn. Mr. Drummond testified that the photographs were taken by him from No. 11 Berkeley Place, almost directly opposite. Mrs. Cruikshank and her father had engaged an apartment at No. 11 for him, and he had taken by a flashlight process pictures of Dr. Cruikshank as he entered and left Mrs. Lowe's house late at night. He had also caught two or three pictures of the doctor, the witness alleged, as he was disrobing in an apartment in Mrs. Lowe's house. Opening his case for the plaintiff, Lawyer Latson told the Jury he would prove every allegation in Mrs. Cruikshank's complaint by the indisputable evidence offered by these photographs was true in substance and fact, and that it was also true and

testimony was given upon the trial of the said suit for divorce in substance as follows: That the defendant in that action was seen disrobing in an apartment in the house of the plaintiff herein, and that photographs were taken of such house."

The motion is to strike out the last part of the alleged defense, viz.: "and that it was true and testimony was given upon the trial of the said suit for divorce in substance as follows: That the defendant in that action was seen disrobing in an apartment in the house of the plaintiff herein, and that photographs were taken of such house."

Walter M. Rosebault, for the motion.

Robert W. Candler, opposed.

GAYNOR, J. The plaintiff pleads an innuendo that the meaning of the language of the alleged libel was, and the defendant intended thereby "to say and impute against the plaintiff," that flashlight photographs which revealed the figure of Dr. Cruikshank "disrobing in an apartment of the house of the plaintiff" were introduced in evidence, "and furnished evidence" that the plaintiff committed adultery with him. She thereby limits and confines her complaint to the words and meaning thus singled out as constituting the alleged libel. The statement in the alleged libel, and the meaning therefrom alleged in the innuendo and attributed to the defendant, viz., that photographs which only showed Dr. Cruikshank disrobing in an apartment of the plaintiff's house "furnished evidence" that she committed adultery with him, is argumentative. To say that a thing is evidence of a dereliction of which it is no evidence may be libelous if it be broad enough to impute that the dereliction occurred. The innuendo therefore assigns no libel unless the statement that Dr. Cruikshank was photographed disrobing in an apartment of the plaintiff's house, coupled with the statement that such photograph was evidence of adultery with him by the plaintiff, amounts to a charge that she did commit adultery with him. The gist of the alleged libel, (if it be a libel), is an imputation of adultery. If there be no such imputation there is no libel. As the alleged defense does not set up that such adultery was committed it is no defense. The course for the plaintiff is to take that objection on the trial, not having demurred.

I have leniently accepted the innuendo as meaning to state that the plaintiff was named as the paramour of the husband in the answer in the action for divorce, for that is the meaning I find in the brief of the learned counsel for the plaintiff. The allegation in the innuendo is that she was named "as co-respondent." Neither in our law nor in the dictionary has the word co-respondent any such meaning. In England in an action for divorce, the plaintiff and the defendant, as we call them, are the petitioner and the respondent. In such an action there the husband may make the paramour a party respondent, and in that way he is and is called "co-respondent." With us if the paramour could be so joined he would be a "co-defendant," not a "co-respondent." Lawyers and judges speak scientifically and with precision out of regard to the science of the law.

The motion is denied.